IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 1:18-CR-454 (CMH) |
| | ) | |
| ISAAC N. GIBBONS | ) | Hon. Claude M. Hilton |
| | ) | |
| Defendant. | ) | Trial: November 12, 2019 |
| | ) | |
| | ) | |

**UNITED STATES' CORRECTED MOTION *IN LIMINE* TO ADMIT ELECTRONIC MESSAGES, STATEMENTS MADE TO LAW ENFORCEMENT AND STATEMENTS MADE TO A MEDICAL PROVIDER**

The United States of America, by and through its undersigned attorneys, respectfully informs the Court that, at trial, the government will seek to admit the statements made by the victim, Jane Doe, on December 22 and 23, 2017, in the form of electronic messages from her cellular telephone, statements to law enforcement, and statements to a medical provider during a medical exam.[1] The electronic messages are admissible as exceptions to hearsay pursuant to Federal Rules of Evidence 803(1), 803(2), and 803(3), statements that are not hearsay under Fed. R. Evid. 801(d)(1)(C), and statements that do not fall within the hearsay definition (either because they were not intended as an assertion or are not being admitted to prove the truth of the matter asserted in the statement. *See* Fed. R. Evid. 801(a) and (c)(2)). The government will also seek to admit statements made by the victim to law enforcement pursuant to Fed. R. Evid. 803(2) and statements made to a nurse in a medical exam pursuant to Fed. R. Evid. 803(4).

---

[1] In this corrected Motion *In Limine,* the government has removed the name of an individual whose name the government will seek to protect in its upcoming CIPA Section 6 filing.

## ARGUMENT

I. **Electronic Messages admissible under Fed. R. Evid 803(1), 803(2), 803(3), 801(d)(1)(C) and as statements that do not fall within the hearsay definition.**

Doe communicated with three people through electronic messages over the course of the night she was sexually assaulted and throughout the next day as she made efforts to leave the defendant's house. One of these people is the friend ("Friend"), whom Doe went to meet on December 22, 2017, and who introduced her to the defendant. Doe also communicated with Kenneth See ("See"), who is a close friend of Doe's and was in Singapore on the night of the assault. The third person is Sila Chy ("Chy"), who was a friend and work colleague of Doe's and who introduced her to Friend.

The context and contents of these statements show that most of them are admissible as exceptions to the rule against hearsay, pursuant to Rule 803(1), Present Sense Impressions; Rule 803(2), Excited Utterances; or Rule 803(3), Then-Existing Mental, Emotional or Physical Condition. A present sense impression is "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." Fed. R. Evid. 803(1); *United States v. Jackson*, 124 F.3d 607, 618 (4th Cir. 1997). An excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of the excitement that caused it." Fed. R. Evid. 803(2); *Morgan v. Foretich*, 846 F.2d 941, 947 (4th Cir. 1988) ("To qualify as an excited utterance the declarant must (1) have experienced a starling event or condition and (2) reacted while under the stress or excitement of that event and not from reflection and fabrication."). Then-Existing Mental, Emotional or Physical Condition is defined as:

> [a] statement of the declarant's then existing state of mind (such as motive, intent or plan) or emotional, sensory, or physical condition (such as a mental feeling, pain, or bodily health), but not including

> a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarants will.

Fed. R. Evid. 803(3); *United States v. Lentz*, 282 F.Supp.2d 399, 411 (E.D.V.A. 2002). To be admissible under this exception, a declaration must "'mirror a state of mind, which in light of all the circumstances, including proximity, is reasonably likely to have been in the same condition existing at the material time.'" *See Colosanto v. Life Ins. Co. of North America,* 100 F.3d 203, 212 (1st Cir. 1996) (citation omitted).

In addition to exceptions to the hearsay rule, other statements in Doe's electronic messages are either not hearsay or fall outside of the rule prohibiting hearsay statements. Statements from Doe that identify the defendant are admissible pursuant to Rule 801(d)(1)(C). Other statements are admissible as they are not offered for their truth. *United States v. Safari*, 849 F.2d 891, 894 (4th Cir. 1988*); United States v. Edelen*, 561 Fed.Appx. 226, 235 (4th Cir. 2014) (unpublished). For instance, "[a] question or inquiry is not a statement, and therefore is not hearsay unless it can be construed as an intended assertion." *United States v. Sinclair*, 301 Fed. Appx. 251, 253 (4th Cir. 2008) (unpublished) (citations omitted). As well, "'evidence is not hearsay when it is used only to prove that a prior statement was made.'" *United States v. Ayala*, 601 F.3d 256, 272 (4th Cir. 2010). Likewise, statements are not prohibited by the rule against hearsay when they are offered to show their effect on the listener rather than truth of the matter asserted. *Safari*, 849 F.2d at 894; *United States v. Gibbs*, 680 Fed.Appx. 184, 186 (4th Cir. 2017) (unpublished) ("incoming texts were admissible to show their effect on Gibbs."). Moreover, in line with holdings from most circuit courts of appeal, a GPS location is not a hearsay statement as the GPS location itself is from "a program making the relevant assertion . . . and machine statements aren't hearsay." *United States v. Lizarrago-Tirado*, 789 F.3d 1107, 1109 (9th Cir. 2015) (citing five other circuits

3

upholding the same).

1. <u>Message to Friend from the club.</u>

Towards the end of the evening, Doe realized Friend and the two other women in the group had left the club where they had been drinking, leaving her alone with the defendant. At 1:40am, Doe sent a message through Facebook to Friend asking "wru; where are you." As the message is a question and not a statement intended as an assertion, it is not prohibited by the rule against hearsay. *Sinclair*, 301 Fed. Appx. at 253.

2. <u>Messages sent from outside the defendant's house.</u>

Upon leaving the club, Doe shared a tuk-tuk (motorized rick-shaw) with Gibbons, believing that she was going to be dropped off at her house. After five to ten minutes, she realized that she was in a neighborhood she did not recognize. When she asked Gibbons where they were, he told her they were in a gated community. Shortly thereafter, the tuk-tuk stopped in front of a house protected by a gate and a guard. Doe was scared but ultimately went inside the gate with Gibbons, knowing that she could not communicate with the tuk-tuk driver because she did not speak Khmer and believing that it would be unsafe to simply leave on foot in an unfamiliar community with a guard present.

Once inside the gate, Doe sent a message over WhatsApp at 1:58am to See stating "Idk [I don't know] where I am" along with a "pin drop" (*i.e.*, a GPS location marker) of her location from her phone. Doe's message to See is admissible both as an excited utterance under Fed. R. 803(2) and then-existing state of mind under Fed. R. 803(3). Doe was under the stress of realizing she was in a strange place where she could not get home, and her message relates to that stressful event and was sent while under that stress from that event. As well, Doe's then-existing mental state was that she did not know where she was.

The pin drop of her location is admissible as it is not a statement. Doe used her phone to send her location to See, and it was the phone rather than Doe that generated the relevant assertion depicting where she was. *Lizarrago-Tirado*, 789 F.3d at 1109. Should the pin drop be considered an assertion by Doe, it is nonetheless admissible under Rule 803(1) as a present sense impression because it states the event or condition of her location as she immediately perceived where she was.

Immediately thereafter, Doe sent Friend a seemingly incomplete message at 2:00 am stating "I'm in." This incomplete message is admissible as it is not offered for its truth but to show that Doe made an effort to contact Friend when she found herself at the defendant's house. *Ayala*, 601 F.3d at 272.

3. <u>Messages immediately after the sexual assault.</u>

After the defendant sexually assaulted Doe, he showed her a knife he had in his bedroom. At this point, Doe was very frightened. Not only had the defendant assaulted her and then showed her a knife, she also recalled a statement she heard earlier that night between the defendant and Friend that people in Cambodia disappear if they know too much. Accordingly, when the defendant left the bedroom, Doe took the opportunity to send messages stating that she had just been raped. At 3:07am, she sent text messages to See stating "Help n"[sic]; "Us diplomat raped me" and an emoji of a sad face. Also at 3:07am, she sent messages to Friend asking "Why did you leave me;" "I'm raoed" [sic]. At 3:08am she sent a message over Telegram to her friend Chy, stating "Help I'm raprd [sic] by [Friend's] friend from the US embassy."

Doe's messages are admissible under Fed. R. Evid. 803(2) as excited utterances. Doe had just experienced undeniably startling events -- being sexually assaulted and shown a knife. Her statements related to those traumatizing events and were written within a two minute period while

5

under the stress of the assault, as demonstrated by her sending the messages at the first available opportunity after the assault.

At 3:12am, she sent another message to See stating "Here in case. [sic] I die" along with another pin drop of her location from her phone. As previously discussed, the GPS location is not a hearsay statement. *Lizarrago-Tirado*, 789 F.3d at 1109. Even if it were deemed to be a statement by Doe, the location and her text are admissible under Fed. R. Evid. 803(1) as a present sense impression, Fed. R. Evid. 803(2) as excited utterances, and Fed. R. Evid. 803(3) as a then-existing mental condition. As a present sense impression, Doe described the event or condition of her location as she was perceiving it. Similar to her messages about being raped, she was still under the stress of the sexual assault, and her fear for her life demonstrates that her statement was related to the stressful event she experienced. Lastly, the message is evidence of her then-existing state of mind that she was concerned she could die while at the defendant's house and she wanted her friend to know her location in case that happened.

4. <u>Messages with See throughout Dec 23.</u>

From the moment she awoke at 7:14am through 1:34pm, Doe continued to exchange messages with See until Special Agent Liam Forde arrived at the defendant's house and rescued her. Over the course of those approximately six hours, Doe and See exchanged messages related to Doe, what was happening to her, and her efforts to leave the defendant's house. The government will seek to admit the entire text exchange between Doe and See during this time. Significant representative examples of these messages include the following:

| | | |
|---|---|---|
| 7:14am | Doe: | OK I'm still alive |
| 9:34am: | See: | Did he like actually rape you; Please call me when you can. |
| 10:51am: | Doe: | Well; I was asking to not do it; I was very drunk. |
| | See: | And? |
| | Doe: | He still did it; I'm just playing along with conversation |

|  |  |  |
|---|---|---|
|  |  | so I can leave. |
|  | See: | What's his name |
|  | Doe: | Good question; I have no idea if it's his real name; He is just in the pool of people in my friend's party |
|  | See: | Just give me the name and I'll talk to my friends in the state department |
|  | Doe: | Then my friend left and asked him to bring me home safely; there must have been a miscommunication; Chill; I think it's Isaac or something. Just don't do anything; Yet; I don't really know where I am lol; it's some villa; And this is not cool |
| 10:56am: | Doe: | He tried to force me again this morning; I just twisted the conversation . . . I just wanna go home.-.-' |
|  | See: | please just get away from that area; like right now. |
|  | Doe: | [pindrop]; I can't you know; He has body guards outside; Cooperate cooperate; Last night he showed me a knife." |
| 11:00am | Doe | He sounds like a hitman; He was just the type where there is a VIP thing at the club. People pool around. They make people get off the floor to reserve for him. Plus guards. |
| 12:26pm | Doe: | I've bee. [sic] Trying to go home since I woke up. |
|  | See: | Why" |
|  | Doe: | It looks like I can't anyway; So I'm gonna cooperate |
|  | See: | Is it just you there? |
|  | Doe: | He's talking about Hun sen. [sic] Putin blablabla; So I'll calm down. |
| 13:25pm | Doe: | Ok now |
|  | See: | Ok as in you can go? |
|  | Doe: | Embassy people arrived here; I think I'm safe now. |

Doe's messages are admissible under several exceptions to the rule against hearsay, including Fed. R. Evid. 803(1) as present sense impressions, Fed. R. Evid. 803(2) as excited utterances, and Fed. R. Evid. 803(3) as a then-existing mental condition. Many of Doe's statements in the conversation are admissible under Rule 803(1) as Doe's present sense impressions as she narrates events as they happened or immediately thereafter. Doe's statements relate to the defendant's efforts to force her to have sex again, the defendant's body guard, that she could not leave, the discussions they were having, and law enforcement's arrival. The statements

7

likewise are admissible as excited utterances pursuant to Rule 803(2). Doe sent her messages while trapped in the house of the man who had just sexually assaulted her, had shown her a knife, and whom she had described as being like a hitman. As such, she wrote to See under the stress of being held captive at the defendant's house, and her statements related to those events that were causing her stress, such as what the defendant did to her, her efforts to leave, and what she was doing with the defendant when not able to leave. Finally, the statements are also admissible under Rule 803(3) as a then-existing mental or emotional condition. For instance, Doe was unsure of the defendant's name, unsure of where she was, did not think it was "cool" to be trapped there, wanted to go home, had decided to cooperate, thought the defendant was a hitman, and finally believed she was safe after law enforcement arrives. Accordingly, her statements relate to her intentions, plans, and emotional condition as the day continued.

Some statements in the exchange are also admissible as statements that are not hearsay or fall outside of the hearsay rule. Doe's statements identifying the defendant are admissible under Fed. R. Evid. 801(d)(1)(C), because she will be testifying in court. As previously discussed, her message sending a pin drop of her location is not her statement. *Lizarrago-Tirado*, 789 F.3d at 1109. Again, to the extent it is considered her statement, it would be admissible as a Rule 801(1) present sense impression. Finally, See's messages to Doe are also admissible as statements that are not offered for their truth. As the other half of the conversation with Doe, See's statements are admissible to show the effect they had on Doe and to place Doe's statements in context, rather than for the truth of any of See's statements. *Safari*, 849 F.2d at 894; *Gibbs*, 680 Fed.Appx. at 186.

5. Messages with Friend on December 23.

At 8:40am on December 23, Friend responded to Doe's messages stating "Good morning.

I feel sick and I told my friend tell you go home. Sorry for miscommunication." Doe and Friend shared a few other messages; and at 10:40pm, Friend wrote "Are you ok?? I am so sorry about what happened to you. I am so angry about what happened to you." Doe responded "I am not the same anymore. Talk some other day. It's too much to handle, [Friend]. I am angry, tired and frustrated." Like See's messages, Friend's messages are admissible for their effect on Doe and to provide context for the way Doe responded the way she did, rather than the truth of those statements. *Safari*, 849 F.2d at 894; *Gibbs*, 680 Fed.Appx. at 186. Doe's statements in this exchange are admissible as then-existing mental and emotional conditions under Rule 803(3), as the statements articulate her feelings at that time.

6. <u>Messages with Chy on December 23.</u>

Doe also exchanged a few text messages with Chy throughout the day on December 23, 2017. Those messages state as follows:

| | | |
|---|---|---|
| 5:06 am | Chy: | Who's [Friend]? Why; How did you met these people? Hope u alright. |
| 8:45am | Doe | I'm still alive; Don't worry. I just don't know where I am; As in your . . . friend from . . . |
| 8:57am | Chy: | How do u met them ? [sic]; Hope u well [sic]; Sorry for not there with u [sic]. |
| 10:54am | Doe: | Just in [Friend's] group last night; Friend the furniture guy; Then take [sic] left bec he was feeling sic; then shit happened; Lesson learned I guess; I'm just playing around with conversations so I can leave safely. Cambodia is pretty crazy I must say. |
| 1:43pm | Doe | I'm okay now. |
| 2:17pm: | Chy: | Be careful on yourself, I can never help u on this [emoji of a sad face]; hope you will have a good Christmas |
| 3:23pm: | Doe: | I'm actually on the embassy; My friend called them or something; I'm freaking out Sila. |

As set forth above with respect to communications between Doe and See and Friend, Chy's messages to Doe are admissible for their effect on Doe rather than the truth of the statement. *Safari*, 849 F.2d at 894; *Gibbs*, 680 Fed.Appx. at 186. Likewise, Doe's messages to Chy are

9

admissible for the reasons previously discussed --under Rules 803(1), 803(2), and 803(3).

## II. Statements to Law Enforcement Admissible under Fed. R. Evid. 803(2), Excited Utterances

SA Liam Forde and the embassy's mobile patrol conducted a safety check at the defendant's residence around 1:00pm on December 23, 2017. When Doe heard the knock on the defendant's door, she was unsure what was happening and hid behind the curtains in his entertainment out of fear of what could happen. Once he entered the residence, Forde asked the defendant to tell Doe to come downstairs. When Doe came downstairs and saw Forde, she felt relieved because she believed her messages had made it to the U.S. Embassy and that she was being rescued. She also felt scared about the process in front of her and that her parents might learn what happened. The defendant left his residence, and Forde conducted an initial interview of Doe out of the defendant's presence.

When SA Forde interviewed Doe, he noted that she was visibly upset and on the verge of tears several times. Forde later described Doe as initially apprehensive and confused as well as upset, shaken, and not wanting to engage. He noted that her demeanor suggested something had happened to her recently. Although she was apprehensive, Forde observed that she was also relieved to see him. Forde also noted that she seemed lost at times, diverting her eyes and thinking about her answers. Forde spoke with Doe for approximately one hour. Doe described in broad terms the events leading to, during and following the sexual assault.

Doe's statements to Forde are admissible under Fed. R. Evid. 803(2) as excited utterances. She had been sexually assaulted that night and had been trapped in the defendant's house until Forde's arrival. Such an event itself is stressful, and Forde's arrival produced its own amount of stress. Notably, Doe hid behind curtains when she heard the doorbell as she did not know what was going to happen and did not want to get caught up in anything. Once the

defendant was removed from that house, Doe was then asked to describe those traumatic events to a stranger. Moreover, Forde's interview of Doe occurred at the end of long ordeal in the very house where she had been sexually assaulted only hours before. In the course of their roughly hour long conversation, Forde observed that Doe was upset and on the verge of crying as well as confused and shaken. Her demeanor showed that she was under the stress of the assault and her captivity when making those statements to Forde.

### III. Statements and Records from a medical exam are admissible under Fed. R. Evid. 803(4).

At 3:30pm on December 23, 2017, Regional Medical Officer Scott Fleming and Cambodian Nurse Sophakna Vy examined Doe. As part of the examination, Fleming conducted an interview of Doe about her experience to assist his examination, and he recorded his notes from the interview in the medical records.

During the examination, Doe reported to Fleming that she experienced forced penile-vaginal intercourse. She described that her assailant wore a condom, and she told the assailant to stop several times. She denied being drugged. Fleming noted that Doe was unsure whether the defendant ejaculated. She further explained that the defendant was big, got on top of her and "pinned her down." Fleming also observed Doe had mild soft tissue swelling in her introitus. He also observed Doe experienced significant pain when he used the vaginal speculum.

Fed. R. Evid. 803(4) allows for the admission of an otherwise hearsay statement that: "(A) is made for – and is reasonably pertinent to – medical diagnosis or treatment; and (B) describes medical history; past or present symptoms or sensations; their inception; or their general cause." The Fourth Circuit has developed a two part test for admitting statements under Rule 803(4) as: "(1) 'the declarant's motive in making the statement must be consistent with the

11

purpose of promoting treatment' and, (2) 'the content of the statement must be such as is reasonably relied on by a physician in treatment or diagnosis.'" *Foretich*, 846 F.2d at 949 (*citing United States v. Renville*, 770 F.2d 430, 436 (8th Cir. 1985)). Moreover, the Fourth Circuit has permitted medical records that include references to an assault to be admissible under Rule 803(4) when the "statements relate more to cause than fault, are consistent with the purposes of promoting treatment, and are in response to information reasonably requested and relied on by a physician. *McCollum v. McDaniel*, 32 Fed.Appx. 49, 55 (4th Cir. 2002) (unpublished). Likewise, the Ninth Circuit specifically found a statement made by a sex assault victim to a registered nurse and sexual examiner on the night of the assault admissible under Rule 803(4), noting: "True, [the registered nurse] was collecting evidence, but that forensic function did not obliterate her role as a nurse, in a hospital, performing a medical examination of a victim of a sexual assault. *United States v. Gonzalez*, 533 F.3d 1057, 1062 (9th Cir. 2008).

Accordingly, Doe's statements to Fleming during the medical exam, both reflected in the medical records and as recalled by Fleming, are admissible as statements to a medical provider under Rule 804(4). Doe's description of forced penile vaginal intercourse was made in the course of a medical examination, and it assisted Fleming in determining the cause, rather than the fault, of Doe's injuries. Similarly, her description of the details, including that the defendant was big, got on top of her and pinned her down, wore a condom and was unsure whether he ejaculated, relate to the inception of her injuries and are pertinent to her medical treatment, including the appropriate course of treatment with regard to any need for emergency contraception or prophylactic treatment for sexually transmitted infections. Accordingly, the statements, including the discussion of force, are admissible under Rule 803(4), as they were made with the intent to obtain treatment and guided Fleming's treatment.

## **CONCLUSION**

For the foregoing reasons, the government respectfully asks the Court to admit at trial Jane Doe's electronic messages and statements made to law enforcement and medical professionals.

                                              Respectfully submitted,

                                              G. Zachary Terwilliger
                                              United States Attorney

By:         _____/s/_____
           John T. Gibbs
           Danya E. Atiyeh
           Patricia Haynes
           Assistant United States Attorneys
           United States Attorney's Office
           Eastern District of Virginia
           2100 Jamieson Avenue
           Alexandria, VA 22314


           Brian A. Benczkowski
           Assistant Attorney General
           Criminal Division

By:         _____/s/_____
           Clayton H. O'Connor
           Trial Attorney
           Human Rights and Special Prosecutions Section

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 8, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of that electronic filing (NEF) to all counsel of record.

By: /s/
Clayton H. O'Connor
Assistant United States Attorney
Counsel for the United States